Our next case for argument is Tibbs v. Galipeau. Good morning. May it please the Court. Mr. Brown. Thank you, Your Honor. Good morning. May it please the Court. Russell Brown on behalf of the appellant petitioner, Jason Tibbs. Your Honor, as the Indiana Court of Appeals held, or did, and also the district court, they presumed that there was deficient performance. And they focused their analysis on the prejudicial prong of the Strickland analysis, so I would like to spend my time doing the same. On the first issue with regards to the fiber analysis, it's important to understand that if there is deficient performance for failing to introduce this fiber analysis from the FBI, and that fiber came from the deceased's hair, that according to the FBI analysis, that that hair was consistent with the fibers from the carpet of McCarty's vehicle. That that's not the totality of the prejudice, because that fiber analysis under state law was the foundation required to get in all of the other third-party guilt evidence pointing to McCarty. And what the Indiana Court of Appeals did, and respectfully the district court did, is just look at the fiber analysis itself, and whether or not that was prejudicial. How old was the fiber analysis at the time of trial? It would have been approximately 20 years old. That's old. I mean, you know, the reason I say it is because, like, the first rule of defense counsel is do no harm, right? You're not going to put an expert on the witness stand to get destroyed on cross-examination. Fair, but defense counsel in this case knew that in order to get all of this other third-party guilt evidence, right, the theory of the— How does that translate? I'm not sure I'm following you. You put in the fiber evidence that's 20 years old. It gets destroyed on cross-examination, and then the judge says, now let's put the McCartys on trial? Yes, Your Honor, because the strategy of the defense counsel in this case was to show that McCarty was culpable or actually was the one that committed this offense. Yeah, and I'm just curious. Isn't sometimes less is more, right? I mean, from a strategy standpoint, you put the seed in the jury's head, and then you let them ruminate on it and deliberate on it, and maybe they come back and think, oh, it is McCarty. It is not guilt beyond—we don't like what happened. Here's a horrendous crime, but maybe there's guilt. Maybe it's not beyond a reasonable doubt. Rather than subjecting a fiber analysis to withering cross-examination where the jury goes back and thinks, well, that fiber was ridiculous, and McCarty had nothing to do with this murder. Well, but if the fiber analysis is the foundation— Sir, you've got to be more precise, Mr. Brown. Yes, Your Honor. When you say it's the foundation, are you saying that without the fiber evidence that the defendant was precluded at trial from putting on a defense that McCarty was responsible for the murder or may have been? Absolutely, Your Honor. Okay, and where does that come from? Is that Indiana evidence law? Yes, it's Indiana case law, and the Indiana Court of Appeals, on the direct appeal, there were several items of evidence that was rejected by the trial court that goes to McCarty's culpability. I have a hard time understanding that because am I right that McCarty at one point in time was indicted for the murder? Yes. So an individual that was indicted for the murder who ended up not being tried for the murder, the criminal defendant on trial, Mr. Tibbs, cannot point as a defense matter to McCarty because of the handling of this fiber evidence? Yes, Your Honor, and that's why it's so prejudicial. And the Indiana Court of Appeals indicated through the analysis of that other evidence that was excluded, the Indiana Court of Appeals said it was properly excluded because there was nothing specifically tying McCarty to the homicide. And it's Mr. Tibbs' position that that fiber evidence that came from his vehicle that ended up in the decedent's hair. Where are you talking about? In the Indiana, you're talking about the direct appeal? The direct appeal, yes, Your Honor. So it would have been impermissible to have asked one of the police department detectives, Arie or somebody else, to say was there a point in time where there was another individual indicted for this murder? Yes, Your Honor, that was specifically precluded from the trial court and affirmed by the Indiana Court of Appeals on direct appeal. Okay. I mean, your brief's not nearly as clear as what you're saying in the courtroom today about that. I guess I would direct, Your Honor, to the direct appeal, and I believe it's quoted in the brief that the Indiana Court of Appeals found that there was not that direct evidence and that this fiber evidence. I mean, all of your arguments before us in the 2254 application are all about ineffective assistance. They're not due process-based arguments that the defendant was precluded from putting on a defense at his criminal trial. Absolutely. And I'm sorry, maybe I'm not being clear on there. It's not a due process argument. But what I'm doing is the prejudicial of the ineffective assistance of counsel that the district courts and the Indiana Court of Appeals only focused on the fiber analysis itself. But what I'm asking the court to do, which I believe is more appropriate, is not just look at the fiber evidence but all of the evidence that could have been admitted and should have been admitted if that fiber evidence was admitted or because that fiber evidence was the foundation required for that additional evidence. The other thing I would like to talk about briefly is this Freeman transcript. And the district courts and the Indiana Court of Appeals goes on to analyze that Freeman was, in fact, cross-examined and Freeman was, in fact, impeached. But respectfully, that impeachment is that he made statements contrary to his trial testimony. The transcript is not just impeachment. The transcript from that June interview is the detectives feeding Freeman details of the homicide, details of the investigation that he then regurgitated in his trial testimony. So there's parts of your argument in your brief where you say the ineffective assistance claim is the failure to fully use the transcript. Correct. Okay. There are other parts of your argument where you seem to suggest that the ineffective assistance is the failure to seek the admission into evidence of the transcript. What are you arguing? So where the argument comes is Detective Aery testified on cross-examination about his interview techniques. And Detective Aery said that he never uses leading questions, nor does he ever- Right. What's the legal error? What was counsel's error? Was it failure to use it or was it failure to offer it into evidence? Both. Because under Indiana law, he failed to do an offer of proof, which then waived the appellate claim on appeal because he failed to offer the transcript as an offer of proof and failed to enunciate and make clear of why he was trying to use the transcript. Detective Aery testified that he did not use leading questions. That transcript is all leading questions. Detective Aery testified that he never provided Freeman information. What's not at all clear to me is whether the transcript was admissible into evidence. The argument that you make about it could have been used more as a fair argument, and you do a fine job with that. But admitted into evidence? I do not believe- I mean, the witness could have been confronted with it. The witness could have been impeached. But there's all this language all over these briefs about admitted, that it should have been offered into evidence. I don't believe under the rules of evidence, Judge, that it would have been admissible as a substantive document, as an exhibit being introduced into evidence. That's why the language really matters. A failure to use is different than a failure to offer into evidence. I would agree with you. Because you've got to show that if you're saying there was an error in not admitting it by Sixth Amendment error under Strickland, you've got to show it would have been admissible. I have a very hard time seeing how it would have come in affirmatively. I would agree, Your Honor. And I know my time is short, but respectfully, Your Honors, we have an innocent man in prison, and we have the opportunity to correct that error, and we ask you to do so. Thank you. Ms. Murray. Good morning. May it please the Court. Tibbs is not entitled to relief because the state court recently determined that he was not prejudiced by the alleged deficiencies of his trial counsel. It was reasonable for the state court to conclude that Tibbs was not prejudiced by his counsel's choice not to offer the then-denounced unreliable fiber evidence that did not directly connect Ray McCarty to the murder of Raina Bryson. And it was reasonable for the state court to conclude that Tibbs was not prejudiced when his counsel chose not to present the transcript of Eric Freeman's police interview. A finding of no prejudice makes sense in this case. Ms. Murray, can you step back a second? I had understood before this morning's argument that the whole theory of defense was that Mr. Tibbs did not commit the murder, that Mr. McCarty did commit the murder or may have committed the murder, and that was the ground on which Mr. Tibbs tried to sow reasonable doubt in the minds of the jurors. Is that an accurate understanding of what happened at the trial? He did present evidence that would implicate Mr. McCarty. He was able to present testimony. Mr. McCarty himself testified that he was convicted of previously molesting the victim about four years earlier. He presented evidence that Mr. McCarty . . . Was subject to cross-examination? Yes. Yes. He presented evidence that Mr. McCarty lied about his whereabouts at that time. He was not prevented from presenting a defense at all. He was . . . He did not offer this fiber analysis. Even if he had, that fiber analysis would not have opened the door to additional evidence of third-party guilt. Much of that evidence was presented to the state court on direct appeal, and the court on direct appeal stated that it was too remote, too speculative to be admissible to show Mr. Tibbs' innocence, and that's a state court determination on state law that this court has gone to follow on habeas review. It then went on to say that certainly if it can't meet this initial threshold of being related to the crime, it could not go on to meet the more strict standard of Joiner, of Allen, which requires a direct connection between a third party and the crime itself or exculpatory evidence. And certainly the fiber evidence did not provide that. It was inconclusive. Even if we take it at face value that it provided a link between Mr. Ray McCarty and Rison, that merely reflected the fact that she was a regular presence in Mr. Ray McCarty's life. It was her brother-in-law, and she regularly visited the home of her sister and brother-in-law, so it would make sense that there would be a connection there. It would not connect Ray McCarty to the crime itself. Further, even if the fiber evidence were admissible and considered to meet the standard of Joiner, much of the third party evidence offered by Tibbs would still not be admissible for other reasons. We can take into consideration his contention that Detective Short should have been allowed to testify that Lori McCarty told him that Mr. McCarty asked her to clean out his car. That is hearsay within hearsay, and it would have been excluded on that basis. So it is unclear that either the fiber evidence would be admissible, and it certainly would not have opened the door to additional third party evidence of guilt. The transcript as well, it is unclear that it would have been admissible in support of Tibbs' case. It would not have been admissible for its substance, as it is an extrinsic statement. It would not have been admissible to impeach Freeman because Freeman testified consistently with the transcript. Mr. Freeman readily admitted that he provided prior inconsistent statements. Mr. Freeman readily admitted that the police provided him with information initially before he gave them that information. He readily admitted that he recalled two instances of the crime very clearly, but was less clear about the details of the crime. He very clearly recalled seeing Mr. Tibbs hit and strangle Raina Rison. He readily recalled helping dispose of her body, but after 20 years, the details were not as clear. The jury had this information. So you started this by saying it's unclear whether the transcript would be admissible. Did you misspeak there? I don't see a basis to admit the transcript. The only basis, we certainly don't have the record for the transcript to be admissible. The only way in which it could possibly be admitted would be to impeach Detective Barry. If he were confronted with a prior inconsistent statement and he agreed that that statement was inconsistent, then the transcript would not be admissible because the impeachment would be complete. However, if he did not own up to that inconsistency, it could have been offered for admission at that point, but we simply don't have the record to show that it would have been admitted for that purpose. And the other problem is that in the 2254, and at least as it's briefed on appeal, the focus is not on the use vis-a-vis Detective Barry. Correct. It's on Mr. Freeman. Correct. Yes. So he could not have used this transcript to impeach Detective Freeman. He could have not had this transcript admitted to impeach Detective Freeman. And to the extent that he's implying, it should have been used to impeach him by a line by line inquiry. That's also precluded by Indiana law. Appleton versus state states that that is improper impeachment because it invites the jury to consider the evidence for its substance rather than its impeachment value. So Mr. Tibbs counsel could not have proceeded in that manner as well. The evidence against tips was overwhelming. We have two eyewitnesses here. We have Eric Freeman and Ricky Hammonds. Freeman saw Tibbs strangled rice and, and helped dispose of her body. Mr. Ricky Hammonds saw Tibbs and Freeman transporting miss Rice's body tips confessed to killing rice into another witness. We also have a motive unrequited love. He told Freeman if I can't have her, nobody can and there was additional testimony to that effect as well. Because the evidence was overwhelming because it is unclear that he would have received a benefit by the actions. He believes his counsel should have taken the state court reasonably concluded that he was not prejudiced by any alleged deficiencies. We would ask that this court affirmed the denial of his petition for habeas corpus. Thank you. Thank you very much. Counsel. The case has taken under advisement.